UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RODNEY E. FLITCROFT JR.,

                 Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

                 Defendant.

Case No. 2:17-cv-01149-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits and supplemental security income benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court reverses and remands defendant's decision to deny benefits for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On June 10, 2013, plaintiff filed an application for disability insurance benefits and supplemental security income benefits alleging that he became disabled beginning December 31, 2002. Dkt. 9, Administrative Record (AR) 252-258, 259-267. The claim was denied on initial administrative review and on reconsideration. AR 145-47, 152-53, 155-56, 157-58. A hearing was held on May 10, 2016, before ALJ Glenn G. Meyers, at which plaintiff appeared and testified, as did vocational expert Steven R. Cardinal. AR 41-80, 159-160.

1       In a written decision dated February 13, 2017, the ALJ documented his analysis at each

2   of the five steps of the Commissioner's sequential disability evaluation process. AR 15-40. At

3   the first step, the ALJ considers whether the claimant is engaged in "substantial gainful activity."

4   *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citing C.F.R. § 416.920(a)(4)). At the

5   second step, the ALJ considers "the severity of the claimant's impairments. *Id.* The third step

6   asks whether the claimant's impairment or combination of impairments meets or equals a listing

7   under 20 C.F.R. pt. 404, subpt. P, app. 1." *Id.* "If so, the claimant is considered disabled and

8   benefits are awarded, ending the inquiry." *Id.* If not, the ALJ considers the claimant's residual

9   functional capacity ("RFC") "in determining whether the claimant can still do past relevant

10  work" at step four, "or make an adjustment to other work" at step five. *Id.*

11      Steps one and two were resolved in plaintiff's favor. AR 20. The ALJ found that plaintiff

12  had the following severe impairments: arthritis of the right upper extremity, depressive disorder

13  with psychotic features, anxiety disorder with panic attacks, status post-surgery for cerebral

14  trauma, substance addiction disorder, cognitive disorder, posttraumatic stress disorder, and

15  hearing disorder. AR 21. At step three, the ALJ found that plaintiff did not have an impairment

16  or combination of impairments that met or medically equaled the severity of one of the listed

17  impairments. AR 22. The ALJ next considered plaintiff's residual functional capacity (RFC) and

18  found at step four that plaintiff could not perform his past relevant work, but that at step five he

19  could perform other jobs that exist in significant numbers in the national economy, and therefore,

20  he was not disabled at that step. AR 32-33.

21      Plaintiff's request for review was denied by the Appeals Council on May 24, 2017,

22  making the ALJ's decision the final decision of the Commissioner, which plaintiff then appealed

23

24

25

in a complaint filed with this Court on July 27, 2017. AR 1-7, 251; Dkt. 1, 4; 20 C.F.R. §§ 404.981, 416.1481.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred: (1) in evaluating the medical opinion evidence of treating psychiatrist David Rowlett, M.D. and three examining psychologists, James Czysz, Psy.D., William Wilkinson Ed.D., and David Mashburn Ph.D.; and (2) in evaluating plaintiff's RFC. Dkt. 10.

<u>DISCUSSION</u>

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). "Where there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Orn v. Astrue,* at 630.

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the

decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

I. ALJ's Evaluation of the Medical Opinion Evidence

Plaintiff challenges the ALJ's decision rejecting the opinion of treating psychiatrist, Dr. Rowlett, and three examining psychologists, Drs. Czysz, Wilkinson, and Mashburn.

Three types of physicians may offer opinions in Social Security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (non-examining physicians)." *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the plaintiff, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. *Id.* A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31. An ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler,* 739 F.2d 1393, 1394-95 (9th Cir. 1984) (internal citation omitted) (emphasis in original). The ALJ must only

explain why "significant probative evidence has been rejected." *Id.*

"[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

a. <u>Dr. Rowlett, treating psychiatrist</u>

On May 10, 2016, Dr. Rowlett completed a mental residual functional capacity assessment regarding plaintiff's mental health impairments and limitations and his ability to sustain activity over a normal work day and work week. AR 1118-19. Dr. Rowlett opined that plaintiff's functional limitations ranged from moderate to marked, with marked[1] social limitations and difficulties maintaining concentration, persistence, and pace. AR 1118-19. In a mental impairment questionnaire, Dr. Rowlett listed plaintiff's diagnoses as major depressive disorder (recurrent moderate), post-traumatic stress disorder (PTSD), cognitive disorder, hepatitis C, traumatic brain injury, and opioid dependence. AR 1120. Dr. Rowlett opined that work-related stressors would increase plaintiff's level of impairment and assigned a GAF score of 42. AR 1121.

Several months later, in October 2016, Dr. Rowlett wrote a letter opining that plaintiff was unable to obtain and/or sustain even part-time employment. AR 1123-24. Dr. Rowlett also stated that plaintiff experienced feelings of being overwhelmed by stimuli, was isolative, his complex attention had declined, he struggled with reading, and his impaired learning capacity

---

[1] Marked limitations are defined as "more than moderate, but less than extreme. A marked limitation may arise when several activities or functions are impaired, so long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately and effectively." AR 1119.

markedly limited adaptation. AR 1123. Dr. Rowlett noted that plaintiff's limitations were due to a traumatic brain injury, neurocognitive disorder, PTSD, and depression. *Id.*

The ALJ gave Dr. Rowlett's opinion little weight for several reasons. AR 30-31. Defendant concedes error to all of the ALJ's reasons, except for the following: (1) Dr. Rowlett's opinion was inconsistent with the objective medical evidence and (2) Dr. Rowlett failed to cite any clinical support for his opinion and relied heavily on plaintiff's subjective complaints. AR 30-31.

### 1. *Inconsistent with Medical Evidence*

First, the ALJ found that: "The assessment that the claimant could not obtain/maintain employment is not consistent with the relatively normal mental health status examinations and/or treatment …." AR 31. Defendant argues that the ALJ found that Dr. Rowlett's opinion was inconsistent with the longitudinal record, and cites to various treatment notes from other medical providers showing that plaintiff was oriented, could concentrate, and that his memory was intact. Dkt. 11 at 5-6 (citing AR 613, 622, 754, 764, 793, 810, 819, 884, 893, 905, 908, 911, 943). Plaintiff argues that the ALJ did not offer this explanation or citation to the record, and defendant cannot cure the ALJ's error in his brief.

The ALJ is required to give detailed, reasoned, and legitimate reasons for disregarding findings by a treating physician; conclusory reasons are insufficient. *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988); An ALJ's rejection of a physician's opinion on the ground that it is contrary to clinical findings in the record is "broad and vague," and fails "to specify why the ALJ felt the treating physician's opinion was flawed". *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). It is not the job

of the reviewing court to comb the administrative record to find specific conflicts. *Burrell*, 775 F.3d at 1138.

Here, although defendant cites to numerous treatment notes in the record from other medical providers, Dkt. 11 at 5, the ALJ did not cite to those notes, nor did he elaborate on *which* "relatively normal mental status examinations and/or treatment" conflicted with *which* part of Dr. Rowlett's opinion. AR 31. It is not clear from the ALJ's decision whether he was referring to an internal inconstancy with Dr. Rowlett's own treatment notes, or that he was rejecting Dr. Rowlett's opinion on the basis that it was inconsistent with the longitudinal record. *See* AR 31. Such conclusory reasoning constitutes an insufficient basis on which to give little weight to Dr. Rowlett's opinion.

### 2. *Plaintiff's Self-Reports*

Second, the ALJ found that Dr. Rowlett did not support the opined limitations with narrative information or explanations or cite to any specific mental status examination(s) (MSE(s)) or objective testing. AR 30-31. The ALJ found that Dr. Rowlett relied heavily on plaintiff's complaints, particularly in terms of limits in concentration and word finding difficulty. AR 31. Plaintiff argues that the ALJ separated Dr. Rowlett's assessment from the narrative statement he provided, and that Dr. Rowlett performed MSEs which he reasonably relied on in preparing his assessment. Defendant argues that Dr. Rowlett simply checked a series of boxes without elaboration or reference to clinical findings and relied heavily on plaintiff's subjective complaints in forming his opinion.

An ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195. And, "[an] ALJ may reject a treating physician's opinion if it is based

'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)).

This situation is distinguishable from one in which the doctor describes his or her own observations in support of the assessments and opinions. *See Ryan*, 528 F.3d at 1199-1200 ("an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations"); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). According to the Ninth Circuit, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at 1199-1200).

The Ninth Circuit clarified that professional assessment of mental illness is different from professional assessment of physical illness, and observed that psychiatric evaluations necessarily analyze a patient's self-reports:

> [A]s two other circuits have acknowledged, "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology." . . . Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry. . . . Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.

*Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)) (internal citations omitted). Thus, "when mental illness is the basis of a disability claim, clinical [findings] may consist of the diagnoses and observations of

professionals trained in the field of psychopathology." *Sanchez v. Apfel*, 85 F.Supp.2d 986, 992 (C.D. Cal. 2000); *see also Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (an opinion based on clinical observations supporting a diagnosis of depression is competent [psychiatric] evidence). Both a clinical interview and an MSEs are "objective measures" that "cannot be discounted as a 'self-report.'" *Buck*, 869 F.3d at 1049 (9th Cir. 2017) (finding a clinical interview and mental status evaluation to be "objective measures" that "cannot be discounted as a 'self-report'").

Further, discrediting a doctor's opinion simply because he used a check box form is not valid unless that opinion is inconsistent with the underlying clinical records. *See Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014) ("the ALJ was [not] entitled to reject [medical] opinions on the ground that they were reflected in mere check-box forms" where the "check-box forms did not stand alone" but instead "reflected and were entirely consistent with the hundreds of pages of treatment notes"); *see also Neff v. Colvin*, 639 F. App'x 459 (9th Cir. 2016) (unpublished); *Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015) (unpublished).

Here, Dr. Rowlett provided an adequate explanation to substantiate his assertions that plaintiff has disabling mental functional limitations. First, Dr. Rowlett submitted a narrative letter and provided an explanation of his opined limitations. AR 1123-24. In addition, between December 2014 and September 2016, Dr. Rowlett met with plaintiff ten times, and his treatment notes include medical findings to support his conclusions. AR 1086-1117, 1120, 1123. During this time period, Dr. Rowlett performed several MSEs, listing a number of results. For example, on March 9, 2015, Dr. Rowlett found that plaintiff's judgment/insight was "four to limited," and that plaintiff had decreased memory, some difficulty maintaining flow of thought, slow speech with occasional hesitancy, and a depressed and anxious mood. AR 1115. On September 22,

2015, Dr. Rowlett conducted another MSE and found that plaintiff had impaired immediate, recent and remote memory, intellectual functioning, judgment/reasoning, insight, fund of knowledge, dysphoric and anxious mood, constricted affect and latent speech. AR 1093. On May 6, 2016, Dr. Rowlett's treatment notes demonstrate similar findings. AR 1086 (observing that plaintiff had an anxious mood, as well as impaired recent and remote memory, judgment/reasoning, fund of knowledge, and insight).

Therefore, the ALJ committed legal error by discounting Dr. Rowlett's opinion due to a supposed lack of clinical findings as well as a purportedly problematic reliance on plaintiff's self-reports. Here, Dr. Rowlett's opinion was based on clinical interviews and the objective results of several MSEs that were consistent with his treatment notes. *See Buck*, 869 F.3d at 1049 (internal citations omitted); *See Garrison*, 759 F.3d at 1014 n.17. Thus, the ALJ's reasoning that Dr. Rowlett's assessment was not supported by clinical findings and based largely on plaintiff's self-reported symptoms is neither legally supported, nor based on substantial evidence. *See Lester*, 81 F.3d at 830-31 (when an examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record").

### 3.    *Harmless Error*

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard

to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-19 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

In the RFC assessment, the ALJ found, in relevant part, that plaintiff "is capable of engaging in unskilled, repetitive, routine tasks in two-hour increments[.]" AR 24. Had the ALJ fully given credit to Dr. Rowlett's opinion, the RFC would have also included additional limitations. As the ALJ's ultimate determination regarding disability was based on the testimony of the vocational expert in response to an improper hypothetical, the error affected the ultimate disability determination and was not harmless.

        b.      <u>Dr. Czysz, examining psychologist</u>

Dr. Czysz performed two psychological evaluations at the request of the Washington State Department of Social and Health Services on March 27, 2013, and April 22, 2015. AR 528-533, 1012-1019. The limitations Dr. Czysz found ranged from mild to marked, with a marked limitations[2] in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances, communicating and performing effectively in a work setting, adapting to changes in a routine work setting, completing a normal work day/work week without interruptions from psychologically based symptoms, and setting realistic goals and planning independently. AR 530-531; 1014.

The ALJ gave substantial weight to Dr. Czysz's opinion of plaintiff's mild to moderate limitations because they were supported by the record. AR 29. However, the ALJ gave only little weight to the marked limitations and GAF score of 45[3] Dr. Czysz assigned. AR 29. The ALJ

---

[2] A marked limitation is defined as a "very significant limitation on the ability to perform one or more basic work activity." AR 530.

[3] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of the individual's overall level of functioning.'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 32); *see also Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998)

reasoned that Dr. Czysz's opinion: (1) Dr. Czysz's opinion was based on plaintiff's self-reports and was internally inconsistent; (2) Dr. Czysz failed to take into consideration plaintiff's history of substance abuse; (3) Dr. Czysz only had "brief contact" with plaintiff and not for treatment purposes; and (4) Dr. Czysz was optimistic about plaintiff's recovery and believed that his impairments would improve within a short duration with treatment. AR 29.

Plaintiff argues that the ALJ erred in assigning partial weight to Dr. Czysz's findings, including little weight to the marked limitations.

### 1. *Plaintiff's Self-Reports and Internal Inconsistencies*

First, the ALJ found that the marked limitations were not substantiated by explicit factors and reflected plaintiff's subjective complaints. AR 29. For example, the ALJ noted that plaintiff was able to recall three words on immediate recall, but responded correctly to judgment questions and his thought processes and content were not within normal limits only due to plaintiff's self-reports of hearing voices. *Id.* Moreover, the ALJ found that in 2015, plaintiff's concentration improved and his thought process was linear and well-directed without evidence of a thought disorder, which was not suggestive of marked limitations. AR 29.

As discussed above, "[an] ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (internal citations omitted). Here, however, Dr. Czysz conducted a clinical interview and MSE in 2013, and another clinical interview and MSE in 2015. The 2013 MSE showed plaintiff's thought process and content, memory, insight and judgment, and

---

("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."). "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." *Pisciotta*, 500 F.3d at 1076 n.1 (10th Cir. 2007) (quoting DSM-IV-TR at 34).

concentration did not fall within normal limits. AR 533. The 2015 MSE revealed similar abnormal findings. AR 1016.

Dr. Czysz also reported his own observations in support of his assessments and opinions. *See Ryan,* 528 F.3d at 1199-1200. For example, during the 2013 interview and exam. Dr. Czysz observed that plaintiff was "quite depressed[,]" and presented disheveled. AR 531-32. During the 2015 interview and MSE, Dr. Czysz observed that plaintiff was paranoid and socially withdrawn, and that while his speech was adequately developed, it was sometimes hesitant, and plaintiff was depressed. AR 1015. In finding that plaintiff's thought process and content were not wholly within normal limits, Dr. Czysz observed that plaintiff's thought process was linear, yet thought content was notable for depressive rumination, self-criticism, negative focus, paranoia and auditory hallucinations. AR 1015.

In finding that plaintiff's perception was not within normal limits, Dr. Czysz observed that plaintiff demonstrated difficulty in distinguishing between internally generated events and objective sensory perception. AR 1016. Dr. Czysz also observed that plaintiff's memory was impaired, noting that he was able to recall three words in immediate recall but only two words on delayed recall. AR 532, 1016. Dr. Czysz observed that plaintiff's capacity for planning and executing executive functions was moderately impaired. AR 1016. No part of Dr. Czysz's evaluation questioned or discredited plaintiff's reports, and in fact, Dr. Czysz noted that psychological testing suggested good effort. *See* AR 528-33; 1012-1019.

These are objective measures, consistent with Dr. Czysz's findings, and the ALJ gave no specific and legitimate reason for rejecting these findings. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (clinical interviews and mental status evaluations are "objective measures" which "cannot be discounted as a self-report"); *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir.

2014) (internal citation omitted) ("when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion."). Based on a review of the relevant record, the Court concludes that Dr. Czysz's opinion of plaintiff's limitations was consistent with his clinical findings and not largely based on plaintiff's self-reported symptoms. Thus, the ALJ's finding that Dr. Czysz's assessment was not supported by his clinical findings and based largely on plaintiff's self-reported symptoms is not supported by substantial evidence. *See Lester*, 81 F.3d at 830-31.

### 2. *Plaintiff's Concurrent and Historical Substance Abuse*

The ALJ afforded less weight to Dr. Czysz's opinion of plaintiff's marked limitations because Dr. Czysz did not mention plaintiff's substance abuse in spite of the fact that the evaluation forms requested such information and plaintiff's treatment records showed that substance abuse affected his mental health. AR 29. Plaintiff argues that the ALJ's finding is unsupported, because Dr. Czysz concluded that plaintiff's impairments were not primarily the result of alcohol or drug use within the past 60 days and that the current impairments would persist event with sixty days of sobriety. Dkt. 10 at 12 (citing AR 1015). Defendant argues that the ALJ reasonably found plaintiff's contemporaneous substance abuse likely affected his presentation to Dr. Czysz.

An ALJ may afford less weight to a medical opinion based on a claimant's contemporaneous substance use. *See Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (affirming where the ALJ "discounted the results of the psychological testing conducted by the examining psychologist based on [the claimant's] alcohol use and his 'not entirely credible' testimony"); *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995) (affirming

where the ALJ found a psychologist's conclusions "unreliable because of [the claimant's] contemporaneous substance abuse").

In this case, plaintiff reported to Dr. Czysz that he had not used any illicit opiates since 2005. AR 529, 1012. Yet there are documents in plaintiff's medical record showing that from 2009 to 2015 plaintiff had methadone treatment and withdrawal, presented to the emergency department with abscesses secondary to injection drug use, presented with an altered mental status at the emergency department, presented to the emergency department for treatment after excessive drinking, and reported alcohol and heroin abuse. AR 586, 487, 581, 594, 599-600, 637, 641, 691, 743, 763, 835-866, 974, 1001-04, 1071, 1079, 1083. Therefore, Dr. Czysz's opinion regarding the materiality of plaintiff's substance abuse conflicts with other evidence in the record. *See Oviatt v. Comm'r of Soc. Sec. Admin.*, 303 F. App'x 519 at *2 (9th Cir. 2008) (unpublished) (affirming where psychologist's failure to review medical records resulted in a lack of awareness about the plaintiff's history of drug use). Thus, this is a valid reason, supported by substantial evidence, to reject Dr. Czysz's opinion with respect to substance abuse as a possible cause of symptoms.

### 3.    *Length of Contact*

Third, the ALJ found that Dr. Czysz's evaluations only involved brief contact, and were not for treatment purposes. AR 29. Plaintiff argues that this claim is unsupported because a consultative examination ordered by defendant constitutes substantial evidence even while it is a one-time assessment. Defendant does not address this argument.

In order to invalidate the opinion of an examining physician that is contradicted by other evidence, the ALJ was required to state specific and legitimate reasons that are supported by substantial evidence in the record. *Lester,* 81 F.3d at 830 (internal citations omitted). However,

the ALJ's decision lacks any substantive explanation as to why Dr. Czysz's "brief" evaluations of plaintiff is a specific and legitimate reason to discount his opinion. If the ALJ could reject an opinion simply because it was based on "brief contact" and not for the purpose of seeking treatment, almost every examining opinion could be rejected for this reason. *See Williams v. Colvin*, 24 F. Supp. 3d 901, 914 (N.D. Cal. 2014) ("The fact of a one-time examination, without any analysis or assessment as to the nature and quality of that examination, is not a sufficient basis for the ALJ's decision to reject Dr. Johnson's opinion."). Without more, this is not a specific and legitimate reason supported by substantial evidence to discredit Dr. Czysz's opinion.

### 4. *Improvement with Treatment*

The ALJ also rejected Dr. Czysz's opinion because Dr. Czysz was optimistic about plaintiff's recovery, believed vocational training could eliminate barriers to employment, and opined plaintiff's impairments would improve within a short duration of treatment. AR 29. Although neither party addresses this finding, *see* Dkts. 10, 11, the Court notes that the Ninth Circuit has found that, particularly where mental illness is involved, periods of improvement do not necessarily mean that the claimant's impairments no longer affect his workplace functioning. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Such observations must be read in the context of the overall diagnostic picture. *Id.* Symptom-free periods are not inconsistent with disability. *Id.* (citing *Lester*, 81 F.3d at 833).

Therefore, Dr. Czysz's opinion regarding plaintiff's potential for improvement with treatment does not undermine Dr. Czysz's opinion that plaintiff's impairments render him unable to work. *See id.* Moreover, the ALJ provided no meaningful analysis nor did he explain why the opinions were somehow contradictory. AR 28. Without more, this is not a specific and legitimate reason supported by substantial evidence to discount Dr. Czysz's opinion.

5.    *Defendant's Additional Arguments*

The Court notes that defendant also argues that other medical evidence refutes Dr. Czysz's opinion. Dkt. 11 at 8. However, the ALJ does not state that it rejected Dr. Czysz's opinion because it was inconsistent with the objective medical evidence. *See* AR 29.

The Ninth Circuit has confirmed that, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina,* 674 F.3d at 1121 ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (citing *Chenery Corp.,* 332 U.S. at 196). Therefore, this allegation is outside the scope of review and the Court will not consider this argument.

6.    *Harmless Error*

Because the ALJ provided at least one specific and legitimate reason, supported by substantial evidence, for giving little weight to a portion of Dr. Czysz's opinion. This unreliable portion of the opinion (regarding whether symptoms might be related to any substance abuse disorder) calls into question Dr. Czysz's findings overall, therefore the other errors --improper reasons the ALJ gave for rejecting Dr. Czysz's opinion -- were harmless. *See Molina*, 674 F.3d at 1115; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("the relevant inquiry in this context is . . . whether the ALJ's decision remains legally valid, despite such error"); *Batson*, 359 F.3d at 1197 (finding ALJ's error harmless because the ALJ provided other legally valid reasons for discrediting the plaintiff's testimony); *Dukellis v. Colvin,* 2013 WL 6852040, at *7 (N.D. Cal. Dec. 30, 2013) (finding error was harmless because other specific

and legitimate reasons supported the ALJ's decision to reject or give reduced weight to examining physician's opinion).

### c. Dr. Wilkinson, examining psychologist

Dr. Wilkinson completed a Washington State Department of Social and Health Services psychological/psychiatric evaluation form on September 27, 2011. AR 404. Dr. Wilkinson opined that plaintiff's limitations ranged from mild to marked, with marked limitations[4] in his ability to be aware of hazards/taking precautions, communicate effectively in a work environment, and maintain appropriate behavior. AR 406-407. Dr. Wilkinson further opined that plaintiff was not capable of work. AR 407.

The ALJ assigned partial weight to Dr. Wilkinson's opinion, reasoning that Dr. Wilkinson's opinion: (1) relied mostly on plaintiff's subjective reporting; (2) was based on a one-time assessment; (3) noted that plaintiff's mental health conditions began in 1993, but he did not explain how plaintiff was able to engage in sustained employment for a few years between 1997 and 2002; and (4) noted that mental health treatment would improve plaintiff's ability to work. AR 28.

### 1. *Plaintiff's Self-Reports*

Although Dr. Wilkinson's opinion was based in part on plaintiff's self-reports, Dr. Wilkinson also relied on objective measures, including a clinical interview and an MSE. AR 404-411 (MSE at 408); *Tommasetti*, 533 F.3d at 1041 ("[An] ALJ may reject a treating physician's opinion," but only "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.") (internal citations omitted).

---

[4] Defined as "very significant interference". AR 406.

ORDER - 18

During the clinical interview, Dr. Wilkinson observed symptoms of depression, anxiety, voices, and alcohol dependency. AR 405. Dr. Wilkinson found that plaintiff had no motivation, no energy, poor concentration, isolates himself, wants to sleep, obsesses cannot focus, and cannot get organized, that his mind wanders, and that he is scared, jumpy, worried, and distracted. AR 405. When asked what observations may have a bearing on plaintiff's ability to perform during a normal work day, Dr. Wilkinson stated that plaintiff was a "[r]ather intense, peculiar person who does a poor job of verbalizing and also quite poor at sharing internal events and lacking insight." AR 407.

While defendant attempts to discount the MSE on the basis that it is simply one page of handwritten notes about Dr. Wilkinson's examination, the functional limitations are based on objective findings and on Dr. Wilkinson's own observations during the clinical interview. *See* AR 406-07 ("gives up at some harder MSE cognitive tasks [e.g.] comprehension[,]" "gets distracted [e.g.] when asked to subtract 7s from 100s he subtracts quickly by 1s[,]" "appears to be too distracted [to learn new tasks][,]" "not able to persist at this time [to perform routine tasks without undue supervision,]" "poor judgment … not making good decisions[,]" "too avoidant, overly sensitive, phobic to work with the public[,]" "would fare better without public contact[,]" and "marked impairment to current behavior, depression, anxiety, confusion, poor decisions, [and] judgment[.]"), AR 408.

Importantly, no part of Dr. Wilkinson's evaluation discredited or questioned plaintiff's reports. *See* AR 404-411; *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)) ("an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own

observations"). These are objective measures, and the ALJ gave no specific and legitimate reason for rejecting these findings. *See Buck v. Berryhill,* 869 F.3d 1040, 1049 (9th Cir. 2017) (clinical interviews and mental status evaluations are "objective measures" which "cannot be discounted as a self-report.").

Based on a review of the relevant record, the Court concludes that Dr. Wilkinson's opinion of plaintiff's limitations was not largely based on plaintiff's self-reported symptoms. Rather, Dr. Wilkinson provided a psychiatric evaluation based Dr. Wilkinson's own observations, the objective results of a clinical interview and MSE, and plaintiff's self-reported symptoms. *See Buck*, 869 F.3d at 1049. Thus, the ALJ's finding that Dr. Wilkinson's assessment was not supported by clinical findings and based largely on plaintiff's self-reported symptoms is not supported by substantial evidence. *See Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1996).

2.      *One-time Assessment*

The ALJ also found that Dr. Wilkinson's evaluation was only a "one-time assessment." AR 28. Plaintiff argues that the ALJ's finding is unsupported because such examinations are routinely relied upon by the Commissioner. Dkt. 10 at 15. Defendant does not address this argument. *See* Dkt. 11. As discussed above, the fact that a physician conducted a one-time examination, is not sufficient to reject that opinion. *See Williams v. Colvin*, 24 F. Supp. 3d 901, 914 (N.D. Cal. 2014). Here, the ALJ failed to discuss the quality or nature of the examination, and his decision lacks any substantive explanation as to why Dr. Wilkinson's one-time assessment is a specific and legitimate reason to discount his opinion. Without more, this is not a specific and legitimate reason supported by substantial evidence to discredit Dr. Wilkinson's opinion.

### 3.    *Plaintiff's Ability to Work*

Third, the ALJ noted that Dr. Wilkinson did not offer an explanation for the fact that plaintiff worked from 1997 to 2002, yet plaintiff's mental health conditions were apparently first diagnosed in 1993. AR 28. Plaintiff argues that this is not a specific and legitimate reason to discount Dr. Wilkinson's opinion.  The Court agrees.

An ALJ may reject a medical opinion when the examination findings contained therein are inconsistent with the medical source's conclusion. *Johnson v. Shalala,* 60 F.3d 1428, 1433 (9th Cir. 1995). Here, however, it is unclear whether Dr. Wilkinson's findings as a whole were inconsistent with his conclusion. For example, the record does not show whether limitations existed when plaintiff's conditions first began in 1993, or (assuming for purposes of this analysis that limitations were present) how severe the limitations were at that time. *See* AR 28, 404-411. Nor is there evidence to show whether plaintiff's conditions improved between 1997 and 2002. *See* AR 28, 404-411. Thus, in the absence of evidence that would give context, this is not a specific and legitimate reason supported by substantial evidence to reject Dr. Wilkinson's opinion.

### 4.    *Improvement with Treatment*

Fourth, the ALJ noted that Dr. Wilkinson opined that mental health treatment would improve plaintiff's ability to work. AR 28. Plaintiff argues that there is no indication that the improvement would result in an ability to perform substantial gainful activity or how soon that may occur.

As discussed above, mental illness may not involve a consistent set of symptoms and the existence of some periods of improvement do not necessarily mean that a claimant's impairments no longer affect his or her workplace functioning. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162

(9th Cir. 2014). Rather, such observations must be considered along with the overall diagnostic picture. *Id.* Symptom-free periods in the record would not inevitably lead to a conclusion that there is no disability. *Id.* Here, the evidence that treatment led to time periods of improvement does not undermine Dr. Wilkinson's opinion concerning plaintiff's impairments and how those symptoms cause him to become unable to work. *See id.* Moreover, the ALJ did not provide any meaningful analysis or explain why this evidence contradicted Dr. Wilkinson's opinion. AR 28. Therefore, the ALJ erred by failing to provide a specific and legitimate reason supported by substantial evidence to discount Dr. Wilkinson's opinion.

### 5.  *Defendant's Additional Arguments*

Defendant also argues that other medical evidence refuted Dr. Wilkinson's opinion. However, the ALJ did not reject Dr. Wilkinson's opinion because of any inconsistency with the objective medical evidence. *See* AR 28.  Therefore, the Court will not consider this argument. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.") (internal citations omitted).

### 6.  *Harmless Error*

In the RFC assessment, the ALJ found, in relevant part, that plaintiff "is capable of engaging in unskilled, repetitive, routine tasks in two-hour increments[,]" and that plaintiff could engage in limited to incidental superficial contact with the public, occasional contact with supervisors and work in proximity to but not in coordination with co-workers. AR 24. Dr. Wilkinson opined that plaintiff was unable to work, and found marked limitations in plaintiff's

ability to be aware of normal hazards, communicate and perform effectively in a work setting with public contact, and maintain appropriate behavior in a work setting. *See* AR 407.

If the ALJ had given full credit to Dr. Wilkinson's opinion, the RFC would have also included additional limitations in plaintiff's cognitive and social factors. *See Molina,* 674 F.3d at 1115. Because the ALJ's decision finding no disability was based on the testimony of the vocational expert – and the expert's testimony was based on an improper hypothetical – which in turn was based on an improper RFC assessment, the error affected the ultimate disability determination and was not harmless. *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

d.     Dr. Mashburn, examining psychologist

On October 11, 2013, Dr. Mashburn conducted a consultative examination. AR 870. He documented that his findings were based both on a review of medical records and on psychological testing results, including those from a mental status examination. AR 870-874. Dr. Mashburn diagnosed plaintiff with major depression with some psychotic features, rule out substance abuse mood disorder, mild cognitive disorder -- due to post head injury, and polysubstance abuse, reportedly in remission. AR 874. Dr. Mashburn assigned a GAF score of 49-52 and opined that while plaintiff was cognitively able to perform work activities, difficulties may occur emotionally and socially. AR 874. Dr. Mashburn explained:

> Cognitively, Mr. Flitcroft would be able to work simple and some detailed jobs and complete those tasks in a timely manner. Complex tasks that change daily would be difficult for this gentleman.
>
> Emotionally and socially is where the difficulties occur. His mood disorder causes more difficulties with reliability than any other factor. When he is actually on the job or in a relationship, he appears to relate adequately and his avoidance of large crowds does not appear to be significantly impairing his life, but his emotional instability keeps him from seeking jobs, keeping them, etc. It should be noted,

with his history of drug and alcohol use, it is certainly difficult to know whether some of the unreliability is due to episodes of using.

AR 874.

The ALJ assigned significant weight to Dr. Mashburn's opinion. AR 30. Plaintiff argues that the ALJ failed to address Dr. Mashburn's statement that plaintiff's mood disorder causes more difficulties with reliability than any other factor, and the impact of his emotional and social stability on his ability to obtain and maintain a job. Plaintiff argues that the limitations discussed by Dr. Mashburn "would clearly interfere with an ability to maintain substantial gainful activity. Dkt. 10 at 16.

An ALJ's interpretations must be explained – the ALJ has a responsibility to show why their analysis, rather than analysis conducted by the doctors, is correct. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Embrey*, 849 F.2d at 421-22). The Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent*, 739 F.2d at 1395 (internal citation omitted)). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571. For example, "an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them." *Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) (citing *Garrison*, 759 F.3d at 1012).

Here, Dr. Mashburn's opinion that plaintiff was not able to obtain or maintain employment because of his emotional instability was significant probative evidence. The ALJ erred in failing to discuss why this evidence was not being accepted. *See* AR 30. Although the ALJ afforded significant weight to Dr. Mashburn's opinion, the ALJ did not discuss this portion of Dr. Mashburn's opinion, and provided no reason to reject it. This is legal error. *See Reddick*, 157 F.3d at 725.

The Court also concludes that the error is not harmless. *Molina*, 674 F.3d at 1115 (internal citations omitted). In the RFC assessment, the ALJ found, in relevant part, that plaintiff "is capable of engaging in unskilled, repetitive, routine tasks in two-hour increments[.]" AR 24. The RFC found that plaintiff could engage in limited to incidental superficial contact with the public, occasional contact with supervisors, and work in proximity to but not in coordination with co-workers. AR 24. Dr. Mashburn opined that plaintiff's emotional instability rendered him unable to obtain or maintain work. *See* AR 874. If Dr. Mashburn's opinion had been fully accepted by the ALJ, it follows that the RFC would have included additional limitations relating to plaintiff's ability to engage in full time employment. As the ALJ's ultimate determination regarding disability was based on the testimony of the vocational expert on the basis of an improper hypothetical, the error affected the ultimate disability determination and was not harmless.

II.  RFC, Hypothetical Questions and Step Five Findings

Plaintiff argues that due to the alleged errors, the RFC was not supported by substantial evidence. Because the Court has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration on this basis, *see supra*, section I, the remainder of the sequential disability evaluation process, including the RFC assessment and step five, will need to be re-evaluated.

III.  Remedy

"The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). A direct award of benefits would be warranted if the following conditions are met: First, the record has been fully developed; second, there would be no useful purpose served by conducting further administrative proceedings; third, the ALJ's

reasons for rejecting evidence (claimant's testimony or medical opinion) are not legally sufficient; fourth, if the evidence that was rejected by the ALJ were instead given full credit as being true, then the ALJ would be required on remand to find that the claimant is disabled; and fifth, the reviewing court has no serious doubts as to whether the claimant is disabled. *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017) (amended January 25, 2018); *Revels,* 874 F.3d at 668.

If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (amended January 25, 2018) (quoting *Treichler v. Comm'r of Social Sec. Admin.,* 775 F.3d 1090, (9th Cir. 2014). If the district court concludes that additional proceedings can remedy the errors that occurred in the original hearing, the case should be remanded for further consideration. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

As discussed above, the ALJ failed to provide legally sufficient reasons for discounting the opinions of Drs. Rowlett, Mashburn and Wilkinson. Accordingly, issues remain regarding the medical evidence in the record concerning plaintiff's functional limitations, and therefore serious doubt remains with respect to the disability determination. Accordingly, remand for further consideration is warranted. Specifically, on remand the Commissioner shall re-evaluate the medical evidence, including the opinions of Drs. Rowlett, Mashburn and Wilkinson, plaintiff's residual functional capacity, plaintiff's ability to perform his past relevant work, and, if necessary, plaintiff's ability to perform other jobs existing in significant numbers in the national economy. Plaintiff has not challenged the ALJ's credibility finding regarding the plaintiff, and the ALJ need not reconsider that finding.

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings.

Dated this 15th day of August, 2018.


_Theresa L. Fricke_
Theresa L. Fricke
United States Magistrate Judge